Case number 23-5204. Ryan Castanera, appellant, versus Kristi Noem, secretary for the Department of Homeland Security in her official capacity et al. Mr. Castanera for the appellant, Ms. Beach, appointed amicus curiae for the appellant, Ms. Hummel for the appellees. Good morning. Mr. Castanera, hear from you first. Good morning, your honors. Mr. Chief Justice, may it please the court. I'm Ryan Castanera. I'm humbled to be appearing here in pro se. Congress enacted the Adam Walsh Act in 2006 in order to protect children from dangerous offenders. As part of that effort, Congress made minor adjustments to the immediate family relative status adjustment process of the INA. Congress removed a subset of those petitions from the Attorney General's purview and entrusted a gatekeeping no-risk determination to the discretion of the Secretary of Homeland Security. Congress did not grant unbounded discretion for that determination because, among other things, it left legal determinations squarely to the Attorney General. The district court erred in concluding that the discretion includes disregarding settled questions of law and binding regulations and could thus trigger a jurisdictional bar. I welcome the court's question. So, how do we know that Congress intended to allow review of the standard of review as opposed to considering that to be within the Secretary's discretion? Well, I think, your honor, the Supreme Court handled that in Kukana when it addressed this particular jurisdiction stripping statute, and it gave massive effect to the language specified in Subchapter 2 of the INA. And Subchapter 1 is the power allocating provisions of the INA, which conferred upon the Attorney General and only the Attorney General to determine questions of law, and it states specifically that those are binding in the execution of the INA. I don't believe Congress silently changed that statutory scheme with the minor adjustments it made to the family petition process. Here we have two separate statutes that talk about unreviewable discretion. We have the provision in, I guess it's 1154, about sole and unreviewable discretion. And then we have 1252 that says that decisions in this subchapter, which 1154 is part of, shall not be subject to judicial review. In there, I believe that the statute uses the terms of decision or action. So we can have two separate instances where Congress makes clear that these sorts of, that a decision or action or that the determination or determines shall not be subject to judicial review. Aren't those all pretty broad words? Decision, action, determine? I believe they are pretty broad. That's pretty broad language. Yes, Your Honor. However, in the jurisdiction stripping provision, again, we are combining ourself only to Subchapter 2 of the INA. And in Subchapter 1, which is what sets up the power allocating scheme between the executive actors of the government that execute the INA, the Congress found no reason to grant the Secretary discretion over matters of law that are settled by the Attorney General, and specifically says that they're binding. So, you know, as you know, it is the purview of these courts to construe statutes. And I don't think Congress intended with that language to write a statute never for the court ever to construe it ever to see what its actual breadth is. Thank you. Can I just ask under your argument, under this part of your argument, at least, it wouldn't necessarily mean that the Secretary would have to make a different determination. It would just, it would mean that the Secretary would have to make the determination anew, but then could reach the same conclusion? He absolutely could, Your Honor. Okay. Absolutely. However, if you read the actual denial notice that the Secretary put out in this case, you can see that he uses a standard of proof that is not what regulation or the Attorney General has determined is appropriate. So I think he would have to begin anew that determination process confined to those parameters. I'm sure my colleagues don't have additional questions for you, Mr. Kessner. Thank you. Thank you, Your Honor. We'll hear from the amicus now. Good morning, Your Honors, and may it please the court. My name is Kate Stetson. I am here this morning in my capacity as a supervising attorney for the Appellate Litigation Clinic of the University of Virginia School of Law. And I'm pleased to introduce Cameron Beach, who will be arguing for amicus. Thank you. The speech. Good morning, Your Honors, and may it please the court. You heard briefly from Mr. Castanera about one of the legal issues today. I'd like to discuss fully the three issues that are presented on appeal. The first concerns jurisdiction, as you heard from Mr. Castanera. The second, the Accardi Doctrine, and the third, the substantive scope of the Adam Walsh Act. Now, we think that the district court had jurisdiction to review Castanera's Accardi claim. But we also think that the Adam Walsh Act doesn't apply to his conduct at all. So I'm going to begin as the brief stew with jurisdiction, but I'd be happy to move to that third argument as the court is interested. On jurisdiction, the district court declined to review Mr. Castanera's federal claims because it reasoned that two statutes, the Adam Walsh Act and the Illegal Immigration Reform Act, together barred its jurisdiction. But that conclusion defies the plain text of the Adam Walsh Act and ignores relevant Supreme Court precedent. I'll start with the act itself and the Form I-130 process here. The agency generally grants these Form I-130s unless it finds that the petitioner had previously been convicted of a specified offense against a minor. In those cases, the Adam Walsh Act directs the secretary to, quote, determine that the citizen poses no risk to his or her beneficiary. In turn, Congress has committed that determination to the secretary's sole and unreviewable discretion. Now, the Supreme Court in McNary v. Haitian Refugee Center has told us that when Congress commits a, quote, determination to the secretary's discretion, that grant of unreviewable discretion protects only the secretary's final decision on the merits from judicial review. It does not protect what the Supreme Court called in McNary, quote, general collateral challenges to illegal policies used by the agency in processing applications. So too here. Now, to evade McNary, the government argues that the word determine, as used here in the Adam Walsh Act, is somehow vastly different from the word determination, as used in the statute at issue in McNary. The government argues that that word, determine, shrouds all of the secretary's legal determinations and unreviewable discretion. As it does the final choice on the merits. Now, that's a lot of weight to put on the word determine, and that's not what the word means. Your honors, the plain meaning of the word determine is to fix conclusively or authoritatively, to settle a question or controversy. The word connotes finality. I mean, I think one thing that is a little tricky for your submission, I think, relative to some of the language that you understandably rely on for some of the decisions is, if there's a part of the process that is collateral, to use the word you used, that may be one thing. But it's a little more difficult to think of the burden that goes directly to the conclusion as being truly collateral in that same way, because it seems intimately bound up with the conclusion. The ultimate determination here, which is in the secretary's sole and unreviewable discretion, and as you acknowledge, is in their sole and is if the citizen poses no risk. And it's just hard to think of that no risk calculus without thinking about the way, the threshold for making the no risk calculus. They seem intimately bound up with each other. So even if you could draw a distinction between matters that are collateral and the ultimate determination, this one seems tighter. I think you can draw that distinction, your honor. And I actually point you to the Supreme Court's decision in McNary itself, where the Supreme Court drew that same distinction. And what the Supreme Court did in that case was to look at the effects of the challenge should the plaintiffs have won. If the effect of the challenge, as you pointed out when you spoke with Mr. Castanero, Chief Judge, if the effect of the challenge is to fully grant the plaintiff a win on the merits, let's say an arbitrary and capricious challenge to the ultimate decision, then that's clearly a direct challenge that would fall under the jurisdictional stripping bar in this case. But what the Supreme Court said in McNary that if the plaintiffs there were allowed to prevail, they'd only be entitled to have their applications reconsidered in light of newly prescribed procedures. That's the type of collateral challenge. You could call it a predicate challenge. That's the type of challenge that we're talking about here today. If Mr. Castanero is successful, he only gets the opportunity to go through the agency's process with the correct procedures in place this time. And so because it is not outcome determinative, it is probably thought of as a collateral challenge, a predicate challenge, something that exists separable from the ultimate decision. Suppose you have the following kind of scenario. The Secretary sets out three considerations that are going to factor in the decision of whether to grant this discretionary relief on the criterion of no risk. There's three considerations that are going to inform the decision. There's a factual context in which those three considerations are applied, and the determination is made that the no risk calculus has been met. And then in a subsequent case, the Secretary applies that and says, okay, we've had this three consideration framework. I'm going to apply the same three considerations, but I'm going to reach the conclusion that actually the no risk threshold has not been satisfied, so I'm going to deny the discretionary relief. And then the challenger says, the person who's affected directly by that challenge says, look, there's those same three considerations. There's no rationale for reaching a different conclusion in this case. If you apply them in any faithful way, you've got to conclude that the same result obtains because you haven't pointed out a relevant distinction from the last time. And then let's suppose further that they say, now I understand I can't get a direct result here that reverses. So what I want you to do is to order that the Secretary considered it again, because it looks like these same three considerations, if applied faithfully, which should reach the same result as last time, which is the grant of relief as opposed to the denial of it. Now, again, the challenger has said, I'm not asking for the result to be reversed. I know I can't do that, but I'm just asking for a new look, because I'm pretty sure that if you apply the same three considerations faithfully, you're going to reach the right result. Is that something that we would consider to be beyond the jurisdictional bar? I think that's a closer case to the way that we have here, Your Honor. But I think if the challenge truly is a predicate challenge in the way I described, it's truly not going to change the ultimate decision on the merits. It's not attacking the ultimate decision on the merits. Then I think under our conception of the word determined, this court would have jurisdiction to review it. But I think what you're pushing on with that hypothetical is the idea that the immigration bar is maybe going to try to exploit a loophole here and try to shove cases into the predicate garb when they're really actually substantive. I think holding for Mr. Castanera today doesn't necessarily mean that that type of challenge you can't hold the other way. But if this becomes an administrability issue and the immigration lawyers start exploiting these differences, there's a solution. Congress can change the statute. But I don't think we should alter the text of the statute as written to accommodate the possibility that the bar will abuse the proper meaning of the word determine. Now, I want to point out briefly that the Supreme Court has given Congress a roadmap of how to bar these purely legal, purely collateral types of questions, and they did so in McNary. The Supreme Court in McNary said, if you want to bar collateral challenges like this, take a look at the Veterans Judicial Review Act. That statute commits to the under laws that impact the provision of benefits to veterans. And then in the same sentence reiterates that those decisions as to law and fact are unreviewable. That's the type of clear language the Supreme Court said would bar collateral legal challenges like the one we have before us. The word determine just isn't enough. Now, McNary was decided in 1991. Congress didn't pass the Adam Walsh Act until over a decade later in 2006. It knew how to thoroughly insulate a decision from review based on that roadmap that the Supreme Court gave it. And instead, it used the word determine. I think it's important here to reflect that we're really debating over the difference between the noun and the verb form of this word. Indeed, the government's hinging a big jurisdictional consequence on that difference. If the government is right and Congress truly meant something so different by using the word determine instead of using the word determination, then uses can conceivably reject all applications filed on a Friday. They can reject all applications filed by people from Connecticut. And of course, those are the sorts of arbitrary decisions that this court would instantly strike down as an abuse of discretion should it have jurisdiction. But the government is saying that you don't. I don't think that's right. I think that's where it's prudent to consider the strong presumption in favor of review of administrative action. Undisputed that the beyond a reasonable doubt standard is wrong. Is it undisputed? It is undisputed that the agency used the beyond any reasonable doubt standard in this case. Is it undisputed that that was error? It is. The government does not contend that the decision, that the administrative appeals office decision in matter of truth is not binding. The decision is binding. So and that decision, of course, says you must use a preponderance standard when when evaluating your answer to me is the government hasn't disputed your assertion to that effect. No, not that everyone agrees that beyond a reasonable doubt cannot be used. That is, I'm just trying to figure out how strong you think that position is. The government does dispute that the matter of truth opinion applies, but it does not dispute that it is binding. We, of course, believe that the matter of truth opinion that requires the ponderance standard in this case does apply. So that's where the dispute is. Your honors, I see that my time is out, but I do want to make sure we talk briefly about the second way that this court could reverse the district court in this case, and that is the scope of the Adam Walsh Act. Is that OK with your honors? Go there now. We'll give you a minute. Thank you. Thank you. We think the Adam Walsh Act doesn't apply to Mr. Castanera's conduct at all. And we talk about the two approaches that this court could take to that question in our briefing. But no matter which one this court applies, Mr. Castanera's actions don't fall under the umbrella of the Adam Walsh Act at all. The Adam Walsh Act requires the petitioner to have been convicted of a specified offense against a minor. That is the hook of conviction from which all of these downstream consequences flow. Mr. Castanera's actions don't fall under that definition because he did not commit a crime against a minor. Congress made it very clear. I don't understand how you can make that argument when the Georgia Court of Appeals decision in, like, the opening paragraph lists the convictions, and then in a footnote lists what statutes were the subject of the convictions, and then in one statute it says offense against a minor in the statute. So the statutes that Mr. Castanera were convicted of can all be violated under mere belief that the person that he was talking to was a minor. And so that's the reason, under both the categorical approach, which we believe is the appropriate approach here, or the circumstance-specific approach, that's the reason why his crimes don't fall under the umbrella of the Adam Walsh Act, because Congress has made it clear that minor is an identifiable legal term, someone under the age of 18 in the statute, and because Mr. Castanera didn't commit a crime against a minor, against someone under the age of 18, he should not have been subjected to the agency's no-risk determination at all. For those reasons, if there are no further questions, we respectfully ask this court to reverse and remand for further proceedings. Can we go back to the jurisdictional issue for a moment? And you say in your brief, and you said this morning, that determine and determination mean the same thing, and that the definitions of determine, really the prevailing definitions are the ones we should care about, are about the ultimate decision. But there are lots of dictionaries, contemporary dictionaries, that use language like determine means to come to a decision by investigation, reasoning, or calculation. Why isn't the process of reasoning or calculation, why isn't that equivalent to standard of review, or your procedure, your methodologies for reaching the ultimate decision? I think your honor points out that both I and the government can find definitions that support our view of the scope of the word determine, but I think what's a little more helpful here is looking at the way Congress uses this word throughout the immigration code. I'd point you to the asylum claim statute. Quote, if the attorney general determines that an alien has made a frivolous application for asylum, the alien shall be permanently ineligible for benefits effective as of the date of that determination. So in the same sentence, Congress directs the attorney general to determine something, and then immediately refers to that as his determination. I think that's what makes it clear that when Congress is using this word in the immigration code, it's referring to finality. It is giving a command to reach an output. Frankly, I think the way Congress uses the word determine is basically the same legislative shorthand as make a determination. If you substituted make a determination here, the statute would mean the exact same thing. Your honors, if there are no further questions, we respectfully ask this court to reverse. Thank you. I'll give you a little time for rebuttal. Thank you. We'll hear from the government now. Ms. Hummel. Good morning. May it please the court. This court should affirm the district court's sound holding of the Adam Walsh Act and section 1252 A2B2 bar judicial review of both the process and the ultimate determination in a no risk determination. As a district court stated, Congress's granted discretionary authority could not be much clearer than the statute's language, which grants the secretary sole and unreviewable discretion to determine whether a form I-130 petitioner convicted of a specified offense against a minor has established that he presents no risk to the intended beneficiary. The statutory language in the Adam Walsh Act and in section 1252 are clear. All circuits to have considered the issues before this court today have reached the same conclusion as the district court below. And I think as a matter of context, it's helpful to remember that under the Adam Walsh Act, the default is that an I-130 cannot be granted for an individual convicted of a specified offense against a minor. So what this case is addressing is actually the exception to that statutory bar on granting. So whether he, Mr. Castanero falls within the exception, which would be an exercise of the secretary's grace to allow the petition to be approved. Isn't that always the case when we're talking about 1252 A2B? It's about denial of discretionary relief, right? So we're always talking about a situation in which the default may be pointing in the other direction, but there's the denial of a discretionary form of relief. Yes, for 1252 A2B2, yes. But in this case, we're looking at subsection two. And we think that the text of both the statutes is clear that the process, which would include the burden of proof that the secretary applies in making the determination fall within that statutory bar against reviewing discretionary decisions. This is supported by the act's text, its grammar and structure, and its history. Looking at the text, the difference between a noun and a verb is significant. Here, where the statute says determines, that is the act of determining, which would include the entire decision-making process. A determination would refer to a single decision or the ultimate outcome. And that is reflected in McNary. In McNary, the statute at issue, the statutory language was a determination respecting an application. That was the discretionary determination. So the court found that it could still review because that challenged a pattern or practice of procedural new process violations. So that is how they got around the jurisdictional bar in McNary. But here, again, we have determines and we have individual claims, so the bar does apply. So you do, then the government acknowledges that if the statute that makes a determination instead of determines, that the result would be different in this case? Yes. But because it says determines, it does fall within the statutory bar. And the grammar that's sole and irreviewable is modifying discretion instead of a decision is also significant. And then additionally, the history that 1252 already barred the ultimate decision. So the Adam Walsh Act extended that to include the process as well. What's your best authority from either our court or the Supreme Court that the distinction between whether the word is used as a noun or a verb changes the meaning in this fashion or in a way? Significance for any purpose of statutory interpretation between the noun and the verb form of the word? I don't know that I have a case that explicitly says noun versus verb, but in the cases that are cited throughout this case, they are dealing with cases where it is a verb. So, or sorry, that it is a noun. So in McNary, that it is a determination respecting an application and then finding that that means final decision. So using a verb, it means something different in this case. You know, and looking at the definition of determines, that it is including things such as consideration, investigation, calculation, that that does refer to something that goes beyond the scope of just that one ultimate determination. What's your response to the amicus' significant reliance on our decision in Make the Road? Because I noticed that the amicus in their briefing relied on that decision quite a bit, and I don't think you even cited it in your brief. Yes, so Make the Road is distinguishable for a couple of different reasons. So in that case, this court was dealing with a statute where the secretary was making a decision whether to subject an individual to expedited removal. And in that case, this court relied on a different statutory provision that explicitly provided for judicial review of that. So that was 1252 subsection E. And again, in that statutory language, which was such designation shall be in the sole and unreviewable discretion of the again, such designation refers to an ultimate decision. Here we have, again, this isn't an affirmative decision about whether to extend somebody a definition to put someone in expedited removal. This is an exercise of grace to allow an approval that otherwise Congress would have prohibited. There is no other statute that explicitly provides that this determination or that its underlying determination process should be reviewed. And the language that we're looking at, unless the secretary in the secretary's sole and unreviewable discretion determines that the citizen poses no risk, doesn't fall back onto the actual decision, but the determination making process. So when you emphasize such designation, is it the same noun verb argument? Yes. If it said designates as opposed to designation, then then it may have come out different. Make the road would do the work. Yes, that's that's possible. If we disagree with your suggestion that Chayworth or however you pronounce it doesn't apply, we think it does, you lose. Yes, but Chayworth should not apply. Well, no, if we disagree with that, you lose. Yes, but it for Chayworth that with that we haven't. And we have an agency, you know, deciding that this is going to be a binding precedent on the agency. An agency can't bind Congress and determine and override what Congress has said in a statute. And here the statute is saying that the discretion should be left to the secretary over the entire process. And the process would clearly include the burden to be applied in making that ultimate determination. So then isn't the answer to Judge Edwards question? No, then, because I thought I thought the premise of the question would be wrong. Is that whether Chayworth binds the agency, not whether it binds Congress? I mean, of course, an agency can't bind Congress. But if if if, in fact, it does bind the agency in this case so that if the agency were faithfully applying the precedent, they would have applied a preponderance standard. My apologies if I understood. So I don't think it's not possible for Chayworth to override the statute. So it can bind the agency and say that where there is no burden of proof provided, then it's possible. But since we have the statute that says that the process should be left to the secretary's decision discretion, then it falls outside of Chayworth. In other words, the secretary, even though the secretary for the secretary's own departmental expectations and regulations is bound to follow the decision, if the secretary arbitrarily decides not to, then the statute would still immunize the secretary's determination from judicial review. Yes, because Congress has said that this is this is within the secretary's discretion, and then that is going to be outside of the court. I understand you have two arguments about the precedent. One is that the precedent doesn't apply because it doesn't cover this context, it covers different contexts. It applies a preponderance standard to a certain category of cases that doesn't encompass this one. And the other is that even if it did encompass this one, that still doesn't matter. We still don't have jurisdiction. And I think that's what I thought that's what Judge Edwards was getting to was the second point, that if we're on the part of the argument that says if Chayworth actually doesn't apply, I'm sorry, does apply here, then we still wouldn't have jurisdiction under the government's view. Yes. Part of your argument then seems to be that the government has the authority to promulgate or adopt Chayworth and then apply it inconsistently as they see fit. And if they apply it this way, their response would be, well, the statute compels. They apply it the other way, well, we have the authority to issue Chayworth and we're bound to follow our own authorities. How can you have it both ways? I don't think it's inconsistent to say if there is no burden supplied in the tax, then it needs to be a preponderance. But of course, Congress can say otherwise. So if it's not inconsistent for- They adopted Chayworth with the statute in place. They have the authority to do that? Yes, I believe they do. Issue Chayworth with the statute in place? Yes, because- And the assumption I would have thought was that Chayworth will be controlling on this question, because we have the authority to do this and we're doing it and it should be controlling. And the rule is, unless the statute says something other than what it says, we can do this. But then the logical extension of that is they can do whatever they want on any given day. It's flip-flopping depending upon what seems to work. Well, no, I mean, only if there's congressional authority that- No, but I mean, the congressional authority thing is there in the first place. The statute is there. It says what it says. But Chayworth came despite its existence. I think because Chayworth doesn't cover these decisions, the no risk determination under the Adam Walsh Act. So perhaps the agency could bind itself regarding other decisions at that- But Chayworth isn't written with that limitation saying in this kind of a situation, it would be preponderance, right? A literal reading of Chayworth supports the other side's position, right? It can't not support the other side's position, unless I'm missing something. No, I would agree with that. I just think that, again, Chayworth covers a different scenario than what we have here where Congress has written in that sole and unreviewable discretion to the secretary. And where in Chayworth does it hedge? I don't think Chayworth does, but I don't think it has to because it would not- Well, then you're in a flip-flop. That's what I'm not understanding. They're adopting Chayworth, and they're not suggesting, well, this is only good in certain kinds of situations. Because it's not clear the statute goes so far as to give the agency authority to go into these procedural issues. And there's nothing in Chayworth that's limited. I don't know how you get there. I don't know that Chayworth would need to address every situation. I mean, it wouldn't have had to address any other jurisdiction, like other jurisdictional bars and things like that, like 1252. I don't think Chayworth needed to necessarily explicitly say it will not apply to the AWA, no risk determinations, because with that statute- Maybe I'm missing this, but I thought your argument, let's suppose Chayworth comes down and Castanera's pending before the secretary at the same time. And let's suppose Chayworth just says, a preponderance of the evidence standards shall govern, including in the pending case of Castanera. And then Chayworth's issues, and then Castanera comes down, and the secretary applies a beyond a reasonable doubt standard. Then is that reviewable? And the challenger says, wait a minute, Chayworth says preponderance. It even went so far as to say that it governs in this case, yet the secretary still applied a beyond a reasonable doubt standard and denied relief. We ought to get judicial review of that. And you, the court, should send that back. What would the government's position be? I still don't think it's reviewable because when you go back to the text of the Adam Walsh Act, it says that it's in the secretary's discretion to decide what the burden will be. So regardless of what the agency says will be in other contexts, I suppose if the secretary decided we are going to apply a preponderance standard and then proceeded to, in this individual case, and then proceeded to apply another one, that's still in the secretary's discretion. Even that. Why would that be different? I mean, from the government's perspective, I don't understand. I mean, your position has to be, I think, that even if the secretary violates the secretary's own admonition about the standard as between beyond a reasonable doubt and preponderance, that it's still unreviewable. There's no legal error there that can be subject to judicial review because the determination at the end of the day is that relief on this no risk act is going to be denied. That's off limits. And the burden of proof that's used to arrive at that is also off limits. And it doesn't matter how erroneous the selection of the burden of proof is. It doesn't matter if it applies in the face of a precedent. It doesn't matter if it applies in the face of the burden that's set out in the very decision itself. It's still off limits. It can't be touched by a court reviewing it. I thought, is that not how the government reads the statute? Yes, it is. And I believe that that's how other courts that have addressed the issue have read it as well. In the Eighth Circuit in Bremer, the court noted that if courts begin to review USCIS's standards of proof and their adjudication procedures, that could easily dictate how USCIS is going to exercise its discretion with the ultimate determination. And that is exactly what Congress sought to prohibit with 1252 and the Adam Walsh Act. So even if we thought that Chagways did govern this case, then the government's position would be that we lack jurisdiction to correct that error. Yes. My colleagues have no questions. No. Thank you, counsel. Thank you. Speech will give you two minutes for a rebuttal. Thank you, your honors. I want to pick up where we left off. I think Judge Edwards picked up on the government's heads I win, tails you lose type of argument with Chagways, that even if Chagways applies and the agency is violating its own binding precedent, that this court does not have jurisdiction to just narrowly correct that error. The statute doesn't give agencies carte blanche to ignore their own binding decisions. The secretary chose to elevate Chagways to binding precedent. He made that decision. These are the consequences. The secretary gave this court a lot to apply. This court can apply it and narrowly review the standard of review issue to bring the agency's actions in line with what is required by Chagways. The secretary can change his mind or her mind, right? That's right, your honor. We'd ask this court or ask the district court to instruct the secretary to either go through the proper procedures to overrule the binding opinion in Chagways or apply the preponderance standard, because Chagways clearly applies to administrative immigration benefits like the form I-130 process here. The last point I'd like to leave you with, your honors, I think it's telling that the distinction, because their position really boils down to this. You have jurisdiction over one form of the word. You do not have jurisdiction over the other form of the word. I just don't think that's enough considering the strong presumption in favor of reviewability of administrative action. Now, I don't want to say this case is cut and dry, but absent clear and convincing evidence that Congress meant to provide review preclusion over this particular type of challenge, this court has jurisdiction to review the agency's actions, and you should resolve your doubts in favor of reviewability. For those reasons, your honor, we respectfully ask this court to reverse. Thank you. Thank you. Thank you to everyone who presented argument this morning. Ms. Beach, you and your clinic were appointed by the court to present arguments supporting the appellant in this matter, and the court thanks you for your assistance.
judges: Srinivasan; Wilkins; Edwards